QUESTION: May a welfare trust fund be established as part of the compensation of employees of a school board through collective bargaining negotiations between a school board and a certified teacher bargaining agent representing the members of the bargaining unit?
SUMMARY: A welfare trust fund established pursuant to a collectively bargained agreement which has been approved and ratified would appear to represent a proper subject of negotiations pursuant to part II, Ch. 447, F. S., and also a proper activity in which a school board can engage pursuant to ss.112.08-112.12, F. S. If such an agreement conflicts with any specific statute or ordinance, the agreement does not become operative until the specific statute or ordinance is amended to encompass the agreement. The information which you have supplied with your inquiry defines and delineates the welfare trust fund contemplated in your question. The fund will be established pursuant to a collective bargaining agreement between a school board and a certified teacher bargaining agent for the purpose of providing benefits and services to participants or beneficiaries of the fund. Such benefits, as described in the proposed fund agreement which you have provided, may include death benefits, hospitalization and surgical benefits, drug benefits, accident and sickness benefits, optical services, preventive medicine benefits, and legal services, as well as other benefits to be determined by the fund's trustees. Before turning specifically to the requirements and authorizations of the Collective Bargaining Act (part II, Ch. 447, F. S.), I might note that there are several provisions found in Ch. 112, F. S., which authorize school boards to provide for life, health, accident, hospitalization, and annuity insurance for their employees and which further authorize salary deductions for the premiums to provide such coverage. Sections 112.08, 112.09, 112.10, and 112.11. It is further provided that: Each . . . school board . . . may pay out of any of its available funds all or part of the premiums or charges for life, accident, hospitalization, or health insurance, as defined by s. 624.603, provided for its officers and employees pursuant to the provisions of s. 112.08. [Section 112.12, F. S.] It therefore appears that a school board can contribute funds pursuant to ss.112.08-112.12 to provide the kinds of benefits contemplated in your question. See also AGO 075-43. I am of course aware of my previous opinion, as expressed in AGO 075-256, that under s.112.08, supra, a district school board may not self-insure its health insurance program for its employees and their dependents. However your question does not contemplate a selfinsurance program, but rather a welfare trust fund whereby the trustees of the fund would be authorized to negotiate with insurance companies for coverage or would be authorized to provide such benefits directly to those employees participating in the fund. However, the specific question which you have raised requires a discussion of the scope of negotiations permissible under the Collective Bargaining Act (part II, Ch. 447, F. S.). If the matters contemplated in your question fall within the permissible scope of negotiations, then they may form a part of a collectively bargained agreement subject to all requirements and provisions of the Collective Bargaining Act. Unfortunately, the Collective Bargaining Act does not provide a definitive answer to this question, and in fact simply indicates that the proper subject matter for a collectively bargained agreement would include all items dealing with the "terms and conditions of employment, as well as a determination concerning wages and hours." Sections447.203(14) and 447.309(1), F. S. Thus, it would appear that matters which make up a collectively bargained agreement can be all-encompassing and in fact may touch on almost every element and facet of the relationship between public employee and public employer. Recently the Public Employees' Relations Commission (PERC) addressed the issue of the scope of negotiations for the first time in the case of Escambia Education Assoc. v. School Board of Escambia County, Cases No.: 8H-CA-754-1110, 1117, 1132, decided May 13, 1976. Because of the broad terms used in part II, Ch. 447, supra, and precedent from other states with similar laws, PERC found that the association's proposals regarding school calendars, class size, leave and retirement provisions, lunch duty, filling vacancies, promotion and transfer procedures, dismissal and layoff procedures, and extra time duty were all items properly within the scope of negotiations. Further, PERC found that the school board's position that promotion, layoff, transfer, and wage rates were nonnegotiable, and therefore outside the scope of negotiations, was an untenable and unjustified position. The position of PERC is based upon and is consistent with decisions in other states with a history of collective bargaining in the public sector. The New York Public Employees' Relations Board (PERB) has found the following subjects to be mandatory subjects of negotiations: Dismissal procedures; exclusive representation status; unit noncompetitive class promotions; certain aspects of competitive class promotions; lay-off procedures; time off for union activities; personal leave; retirement benefits; off duty work; safety rules; work schedules; seniority lists; establishment of a labor management committee. [City of Albany v. Albany Police Officers Union Local 2841, AFSCME, AFL-CIO, Case No. U-1369, issued December 19, 1974; City of Albany v. Albany Permanent Professional Firefighters Association, Local 2007, AFL-CIO, Case No. U- 1371, issued December 19, 1974.] The New York PERB has ruled that with regard to school board negotiations the following items are mandatory subjects of negotiations, and failure to engage in good faith bargaining concerning these matters would be an unfair practice: Evaluation and dismissal procedures for probationary teachers; mandatory retirement of members of the Teachers' Retirement System who are aged 70 or over. [Harrison Assoc. of Teachers v. Bd. of Education, Central School Dist. No. 1, Harrison, N.Y., Case No. U-0768, issued March 19, 1973; Monroe-Woodbury Teachers Assoc. v. Monroe Woodbury Bd. of Educ., Case Nos. U-0061, U-0070, issued July 24, 1970.] The Wisconsin Employees' Relations Commission (WERC) has held that school boards must bargain with teachers' associations on items directly affecting teachers' job security, including access to their personnel files, as well as the order of teacher layoffs and recalls, but are not required to bargain educational policies such as class size and student pilot programs; however, when such educational policies have an impact on teaching loads and salaries, boards must bargain that impact. Insofar as the impact of class size, which itself is an educational policy, affects hours, salaries, and other conditions of employment, it must be bargained. See Beloit City School Bd. and Beloit Education Assoc.; WERC Case V, No. 16732DR (M)- 43, Decision No. 11831-C, September 11, 1974. Oak Creek-Franklin Joint City School District No. 1 and Oak Creek Education Association; WERC Case III, No. 16717 DR (M)-42, Decision No. 11827-D, September 11, 1974. The Pennsylvania Supreme Court has ruled that where an item of dispute is a matter of "fundamental concern to the employees' interest in wages, hours and other terms and conditions of employment," it is not removed as a matter subject to collective bargaining simply because it may touch upon basic, inherent managerial policy, such as standards of services, overall budget, utilization of technology, organizational structure, and selection and direction of personnel. Pennsylvania Labor Relations Bd. v. State College Area School District, The Bd. of School Directors, Case Nos. 49, 50, 51, January Term, 1974, opinion filed April 17, 1975. Similar broad definitions and interpretations of the scope of negotiations are found in Oregon and Michigan. Springfield Education Assoc. v. Springfield School District No. 19, Oregon PERB Case No. C- 278, July 14, 1975; Westwood Community Schools v. Westwood Educ. Assoc., Case No. C70-I-152, March 24, 1972. Based upon the interpretation given to the Florida collective bargaining law by PERC and also the consistent decisions from other jurisdictions, it is my opinion that a welfare trust fund as you have described would be a proper subject of negotiations for a collective bargaining agreement since it appears to fall within the broad scope of negotiations provided in part II, Ch. 447, supra. Nevertheless, although included within the scope of negotiations and therefore a permissible part of a bargained agreement, if the welfare trust fund proposal as finally adopted and ratified conflicts with any specific statute or ordinance, it shall be the duty of the chief executive officer of the school to submit to the appropriate governmental body having amendatory power a proposed amendment to the conflicting law, ordinance, rule, or regulation in order to effectuate the terms of the collectively bargained agreement. However, until such amendment is enacted, the conflicting provision of the agreement does not become effective. Section 447.309(3), F. S. The fact that negotiations may result in agreements which conflict with statutes or ordinances does not in my opinion limit the scope of such negotiations, but rather may result in recommendations by the chief executive officer for legislative changes. Thus, a broad scope to negotiations serves the useful purpose of fostering recommendations for statutory changes which will allow agreements to be effectuated. In addition, if a conflict exists between the requested appropriation to fund an agreement and the amount actually appropriated, the agreement shall be administered on the basis of the amounts appropriated by the legislative body. The failure to appropriate funds sufficient to fully fund an agreement shall not constitute an unfair labor practice. Section 447.309(2), F. S.